**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

|  |  |  |
|---|---|---|
| | * | |
| **TRUSTEES OF THE ELECTRICAL** | | |
| **WELFARE TRUST FUND, et al.,** | | |
| | * | |
| **Plaintiffs,** | | **Case No.: GJH-19-2047** |
| | * | |
| **v.** | | |
| | * | |
| **AMERICA'S BEST SERVICE, INC.** | | |
| | * | |
| **Defendant.** | | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

The Electrical Welfare Trust Fund ("Welfare Fund"), the Electrical Workers Local No. 26 Pension Trust Fund ("Pension Fund"), the Local No. 26 Joint Apprenticeship and Training Trust Fund ("Apprenticeship Fund"), the Local No. 26 Individual Account Fund ("IA Fund"), the National Electrical Benefit Fund ("NEBF") (collectively, the "Plaintiff Funds"), the Local Labor Management Cooperation Committee ("LMCC"), the National Electrical Contractors Association, Washington D.C. Chapter ("NECA"), the Local No. 26, International Brotherhood of Electrical Workers ("Local 26") and their respective trustees and collection agents (collectively with the Plaintiff Funds, the "Plaintiffs"), bring this action against Defendant America's Best Service, Inc. under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. (1982), and Section 301 of the Labor Management Relations Act of 1948 ("LMRA"), 29 U.S.C. § 185. Now pending before the Court is Plaintiffs' Motion for Summary Judgment. ECF No. 13. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). Plaintiffs' Motion for Summary Judgment is granted, in part, and denied,

in part. Judgment is entered against Defendant in the total amount of $135,291.19, exclusive of attorneys' fees and costs.

## I.      BACKGROUND[1]

The Plaintiff Funds are multiemployer employee benefit plans as defined in ERISA Section 3(37), 29 U.S.C. § 1002(3). ECF No. 13-2 ¶ 4. The Funds were established, and are maintained, as the result of collective bargaining pursuant to Section 302(c)(5) and (6) of LMRA, 29 U.S.C. § 186(c)(5) and (6). ECF No. 1 ¶ 4; ECF No. 5 ¶ 4.

Defendant is a corporation incorporated under the laws of the state of Maryland. ECF No. ECF No. 1 ¶ 10; ECF No. 5 ¶ 10. Defendant is an "employer" within the meaning of 29 U.S.C. § 152(2) and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was engaged in an "industry affecting commerce," within the meanings of Sections 3(11) and (12) of ERISA, 29 U.S.C. §§ 1002(11) and (12). ECF No. 1 ¶ 10; ECF No. 5 ¶ 10.

On November 19, 2007, Defendant executed a Letter of Assent that authorized Plaintiff NECA to be its collective bargaining representative for labor agreements between NECA and Plaintiff Local 26, a local union of electrical workers covering Washington, D.C., and parts of Maryland and Virginia that represents employees in an industry affecting interstate commerce. ECF No. 13-2 ¶¶ 5, 9; ECF No. 13-2 at 9–10. In signing the Letter of Assent, Defendant agreed "to comply with, and be bound by, all of the provisions contained in [the CBAs]." *Id.* at 9. At all times relevant to this action, Defendant agreed to the terms of the CBAs obligating it to make monthly contributions to the Plaintiff Funds. *Id.* ¶¶ 10–12. Payments due to Plaintiffs are calculated separately for each Plaintiff based on remittance reports prepared by the employers, subject to audit. *Id.* ¶¶ 13–15. Pursuant to the terms of the CBAs and Trust Agreements, the

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.

completed remittance reports and accompanying contributions and dues payments are due to the Plaintiffs no later than the 30th day after the end of each month in which the contributions or dues accrued and are delinquent if received thereafter. *Id.* ¶ 16.

Pursuant to terms of the CBAs and the Trust Agreements, Defendant is required to:

a) submit to Plaintiffs, within 30 days of the end of the month in which the contributions and dues accrued, remittance reports listing the name of each person employed pursuant to the CBAs and the number of compensable hours of wages paid to each such person during the relevant month;

b) submit contributions to the Plaintiff Funds, LLMCC and NECA in the amounts due under the CBAs;

c) pay interest and liquidated damages to the Plaintiff Funds on any contributions submitted after the due date. Interest is to be assessed at the greater of the rate provided for in IRC §6621 or D.C. Code §28-3301(a) on all delinquent contributions, calculated from the due date of each delinquent contribution until the date the delinquent contribution is actually paid to the relevant Plaintiff Fund.[2] Liquidated damages are to be assessed in an amount equal to the greater of 20% of each delinquent monthly contribution, or $50.00 per month;

d) pay attorneys' fees and costs incurred by the Trustees in collecting the amounts due the Plaintiff Funds; and

e) withhold and make payment for union dues of members to Local 26.

*Id.* ¶ 17.

---

[2] The Welfare Fund, Pension Fund, IA Fund and Apprentice Fund have each adopted an interest rate on all delinquent contributions at the rate of 0.019% per day. *Id.* ¶ 18. The NEBF has adopted an interest rate of 10% per annum. *Id.*; *see also id.* at 224.

According to the Declaration of Michael McCarron and attached exhibits submitted in support of Plaintiffs' Motion for Summary Judgment ("McCarron Declaration"), Defendant failed to make the requisite contributions and union dues payments, and failed to submit the corresponding remittance reports, for work performed during the months of October and November 2019. ECF No. 13-2 ¶ 19. Additionally, the Declaration states that Defendant underpaid contributions from May 2018 through July 2019 in the amount of $5,351.26, *id.* ¶ 21, and was habitually late in paying contributions from April 2018 through September 2019, *id.* ¶ 23. Defendant generally disputes that it missed all of the contributions alleged but does not specify which it paid or provide any evidence supporting this claim. ECF No. 14 at 2.

Lacking the remittance reports for October and November 2019, Plaintiffs originally estimated, based on Defendant's September 2019 payment, that Defendant owed $60,651.26 in delinquent contributions and dues;[3] $6,653.45 in interest, calculated through January 14, 2020, and $120,569.22 in liquidated damages, exclusive of attorneys' fees and costs. ECF No. 13-2 ¶¶ 20–24; ECF No. 13-2 at 231; ECF No. 13-1 at 7. Defendant has since submitted remittance reports and contributions in the amount of $66,723.31 for October and November 2019, but has not paid interest or liquidated damages for those months. ECF No. 18-1 ¶¶ 2, 7. Defendant has also not paid the delinquent contributions from May 2018 through July 2019, or the interest and liquidated damages for the unpaid and late-paid contributions from April 2018 through September 2019. *Id.* ¶¶ 5–7. Based on the actual contributions and reports provided, rather than

---

[3] The declaration attached to Plaintiffs' motion incorrectly states the total amount of delinquent contributions and dues as $55,300.00, ECF No. 13-2 ¶ 24, but it is clear from the prior paragraphs, *id.* ¶¶ 20–21 (stating $55,300.00 in delinquent contributions for the months of October and November 2019 and $5,351.26 in underpaid contributions from May 2018 through July 2019), the total figure stated, *id.* ¶ 24 (stating the total amount due to Plaintiffs as $187,873.93, which, less the $6,653.45 in interest and $120,569.22 in liquidated damages, equals $60,651.26), and Plaintiffs' memorandum, ECF No. 13-1 at 7 (stating that the amount of delinquent contributions and dues is $60,651.26), that this was an error, and represented only the amount for October and November 2019, rather than taking into account the additional delinquent payments from May 2018 through June 2019.

the earlier estimates, Plaintiffs now seek $6,130.51 in delinquent contributions;[4] $7,389.08 in interest, calculated through April 8, 2020; $133,723.51 in liquidated damages; and attorneys' fees and costs. *Id.* ¶ 8; *Id.* at 4; ECF No. 18 at 5.

On July 12, 2019, Plaintiffs filed suit against Defendant under ERISA Sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, and LMRA Section 301(a), 29 U.S.C. § 185(a), to collect delinquent contributions and dues they claimed Defendant owes to the Plaintiffs under the terms of the collective bargaining agreement with Plaintiff Local 26 to which Defendant is bound. ECF No. 1. Plaintiffs filed their Motion for Summary Judgment on January 17, 2020. ECF No. 13. Defendant filed its Opposition on February 20, 2020. ECF No. 14. Plaintiffs filed their Reply Memorandum on April 16, 2020. ECF No. 18.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to

---

[4] This figure includes the $5,351.26 in underpaid contributions from May 2018 through July 2019, *see* ECF No. 13-1 ¶ 18, as well as an additional $779.25 in underpaid contributions from December 2019 and January 2020 that Plaintiffs assert for the first time in their Reply, stating, "[s]ince filing Plaintiffs' Motion, it was determined that America's Best also underpaid contributions to the Pension Fund, Apprenticeship Fund and IA Fund for the period December 2019 through January 2020 in the amount of $779.25," ECF No. 18-1 ¶ 4.

identify specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only genuine if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Hearsay statements or conclusory statements with no evidentiary basis cannot support or defeat a motion for summary judgment. *See Greensboro Prof'l Firefighters Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

The Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery). However, summary judgment should not be granted if the nonmoving party has not had the opportunity to discover information that is essential to his opposition to the motion. *See Anderson*, 477 U.S. at 250 n.5. Under Rule 56(d), the Court may deny a motion for summary judgment if the non-movant shows that, for specified reasons, he or she cannot properly present facts, currently unavailable to him or her, that are essential to justify an opposition. Fed. R. Civ. Pro. 56(d). However, a party generally must

comply with Federal Rule of Civil Procedure 56(f), which requires that it set out the reasons for discovery in an affidavit. *See Hayes v. N. State Law Enforcement Officers Ass'n*, 10 F.3d 207, 215 (4th Cir. 1993).

"The Fourth Circuit has strictly interpreted the requirements of Rule 56(f), emphasizing the need for a Rule 56 affidavit that 'particularly specifies legitimate needs for further discovery' and identifies 'which aspects of discovery required more time to complete.'" *Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008) (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).

Defendant does not argue further discovery is necessary, instead arguing that material facts remain in dispute. ECF No. 14 at 2.

## III.   DISCUSSION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145, and Section 301 of the LMRA, 29 U.S.C. § 185. Venue is proper under 29 U.S.C. §§ 1132(e)(2), 1451(d), as the Plaintiff Funds are administered in this district, and the alleged breach of the collective bargaining agreements applicable to the Plaintiff Funds and the consequential breach of Section 515 of ERISA, 29 U.S.C. § 1145 and Section 301 of the LMRA, 29 U.S.C. § 185, occurred within this district. *See Trustees of Nat. Automatic Sprinkler Indus. Pension Fund v. Best Automatic Fire Prot., Inc.*, 578 F. Supp. 94, 95 (D. Md. 1983).

Defendant does not dispute that "it has a responsibility to make contributions to the Plaintiffs under its ERISA obligations." ECF No. 14 at 3. Defendant contests "that it missed all of the contributions it is alleged to have not paid." *Id.* at 2. Under the Federal Rules, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion

of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of

the motion." Fed. R. Civ. P. 56(e)(2). Here, Defendant does not provide anything other than bare

assertions to refute the specific allegations contained in the McCarron Declaration regarding its

failure to timely provide remittance reports and contributions from April 2018 through

September 2019 or to provide them at all in October and November 2019. Defendant does not,

for example, state which contributions it paid and which it did not. Thus, the facts in the

McCarron Declaration are considered to be undisputed. *See Greensboro Prof'l Firefighters*

*Ass'n, Local 3157 v. City of Greensboro*, 64 F.3d 962, 967 (4th Cir. 1995).

Defendant also disputes "that the Plaintiffs can recover contributions based on estimated

figures."[5] ECF No. 14 at 2. Notably, Defendant does not actually dispute those figures—only

whether Plaintiffs can rely on estimates at all. Courts have found reasonable estimates sufficient

to establish damages where the defendant has failed to provide the remittance reports needed to

determine the exact amount owed. *See, e.g., Int'l Painters & Allied Trades Indus. Pension Fund*

*v. 3 R Painting & Contracting Co*., No. CIV.A. RDB-12-272, 2013 WL 424694, at *1 (D. Md.

Jan. 31, 2013) ("Because the Defendant has failed to submit remittance reports for May 2012, the

Plaintiffs have had to estimate the remainder of the total unpaid contributions . . . by 'averaging

the three months of contributions prior to the first month in which no report is received.'"); *Bd.*

*of Trustees, Sheet Metal Workers' Nat. Pension Fund v. 5 Star Washer Serv., Inc.*, No.

1:11CV0331 CMH/JFA, 2011 WL 5190852, at *4 (E.D. Va. Sept. 14, 2011), *report and*

*recommendation adopted*, No. 1:11-CV-331, 2011 WL 5196545 (E.D. Va. Oct. 28, 2011)

("When contributing employers fail to submit monthly remittance reports and fail to make the

---

[5] Defendant later takes this argument further, disputing that it cannot be "found liable for breaching its agreements based on estimations of what Plaintiffs believe are owed." ECF No. 14 at 3. But this confuses the issues. The question of whether damages may be estimated does not bear on Defendant's actual liability for breaching its contractual duties.

required contributions, the Funds must estimate the amounts owed to the Funds in any legal action to collect delinquent contributions."); *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) ("In light of the defendant's failure to provide periodic reports or allow the plaintiffs access to the defendant's books and records, the court accepts the plaintiffs' estimation of delinquent contributions as both reasonable and as accurate as possible under the circumstances."); *Zimmermann v. J & S Companies, Inc.*, No. 4:04-CV-979 CAS, 2005 WL 2874700, at *7 (E.D. Mo. Nov. 1, 2005) ("Because defendant did not submit a report for August 2004, plaintiffs are entitled to make a reasonable estimate of amounts owed.").[6] Indeed, "[a]n employer should not escape liability for his failure to pay the wages and benefits due his employees by hiding behind his failure to provide the requisite records." *Trustees of the U.A. Local 393 Pension Fund v. Pierce*, No. C-14-00738-RMW (HRL), 2014 WL 6481873, at *4 (N.D. Cal. Nov. 18, 2014).

When a plaintiff provides a reasonable estimate for the delinquent contribution, "[t]he burden then shifts to defendant to show that Plaintiffs' estimate is wrong and prove the exact amount owed." *Zimmermann*, 2005 WL 2874700, at *7. When a defendant does "not provide a contrary estimate of damages owed" nor "identify any specific errors" in the plaintiff's calculations, the defendant does not satisfy "its burden to point to specific facts in the record that reveal a genuine issue suitable for trial." *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Jersey City Healthcare Providers, LLC*, 358 F. Supp. 3d 12, 25–26 (D.D.C. 2019). Here, Defendant disputed the use of estimates itself, arguing that they are per se inadequate at the summary judgment stage, but did not provide its own calculations nor indicate specific

---

[6] Although several of these cases were decided in the context of default judgments, they nevertheless establish that, if necessary, and in the absence of evidence to the contrary, reasonable estimates can be sufficient to show damages.

objections to Plaintiffs' calculations. Therefore, Defendant failed to establish a "genuine dispute" as to the damages calculation.

However, even had the use of a reasonable estimate been found insufficient, Defendant's argument is rendered moot by its payments of the October and November 2019 contributions and submission of the remittance reports for those months on February 7, 2020. *See* ECF No. 18-1 ¶¶ 2, 7; ECF No. 14 at 3–4. Plaintiffs were able to rely on those payments and reports in their Reply Memorandum, meaning the final calculations were no longer based on estimates, however reasonable and permissible they had been. ECF No. 18 at 9–10; ECF No. 18-1 at 4. As Defendant did not point to any specific issue with the calculations Plaintiffs provided, aside from their use of estimated figures for the months of October and November, the Court will award damages based on the figures provided in Plaintiffs' Reply.

### a. Damages for Late Payments

29 U.S.C. § 1132(g)(2) provides that in any action brought to enforce the payment of delinquent contributions, and in which a judgment in favor of the plan is awarded, the court shall award the plan:

> (A)    the unpaid contributions,
> (B)    interest on the unpaid contributions,
> (C)    an amount equal to the greater of—
>    i.  interest on the unpaid contributions, or
>   ii.  liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D)    reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E)    such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2); *see also Bd. of Trustees Sheet Metal Workers' Nat. Pension Fund v. Columbus Show Case Co.*, 2014 WL 3811252, at *4 (E.D. Va. Aug. 1, 2014); *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 686 (D. Md. 2013); *Trustees of Plumbers & Pipefitters Nat. Pension Fund v. Lake Side Plumbing & Heating, Inc.*, No. 1:12-CV-00298 LO/IDD, 2012 WL 6203001, at *4 (E.D. Va. Nov. 20, 2012).

Plaintiffs assert that, pursuant to the CBAs, interest is to be assessed at the greater of the rate provided for in IRC §6621 or D.C. Code §28-3301(a) on all delinquent contributions, calculated from the due date of each delinquent contribution until the date the delinquent contribution is actually paid to the relevant Plaintiff Fund. ECF No. 13-2 ¶ 17. The Welfare Fund, Pension Fund, IA Fund and Apprentice Fund have each adopted an interest rate on all delinquent contributions at the rate of 0.019% per day. ECF No. 13-2 ¶ 18. The NEBF has adopted an interest rate of 10% per annum. *Id.*; ECF No. 13-2 at 224. Additionally, liquidated damages are to be assessed in an amount equal to the greater of 20% of each delinquent monthly contribution, or $50.00 per month. ECF No. 13-2 ¶ 17. Defendant does not dispute these assertions.

On February 7, 2020, Defendant paid the October and November 2019 contributions, ECF No. 18-1 ¶¶ 2, 7; ECF No. 14 at 3–4, but Plaintiffs contend Defendant is still responsible for paying the interest and liquidated damages on those late payments as well as the attorneys' fees and costs incurred to collect them, ECF No. 18 at 8–9. Although the Fourth Circuit has yet to address this question, the majority of circuits have agreed that, even where a defendant makes the payments after the suit is filed, it still must pay the other costs outlined in Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). *See Bd. of Trustees, Sheet Metal Workers' Nat. Pension Fund*

*v. Aeromark Mech., Inc.*, No. 1:12-CV-18, 2013 WL 4399324, at *3 (E.D. Va. Aug. 13, 2013)

("The Third, Fifth, Seventh, Eighth, and Ninth Circuits have also determined that Section

502(g)(2) remedies apply to all contributions that are unpaid at the time a plan files suit, even if

those debts are satisfied in whole or in part before judgment is entered."). "[A]n employer cannot

escape its statutory liability for interest, liquidated damages or double interest, attorney fees, and

costs simply by paying the delinquent contributions before entry of judgment in a § 502(g)(2)

action brought to recover delinquent contributions." *Id.* at *2 (quoting *Iron Workers Dist.*

*Council of W. New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators &*

*Erectors, Inc.*, 68 F.3d 1502, 1505 (2d Cir. 1995)) (internal quotation marks omitted). Therefore,

Defendant must pay the liquidated damages, interest, and attorneys' fees and costs for the

October and November 2019 payments.

However, courts have found that "unpaid contributions" does not encompass payments

that were late, but paid prior to the suit being filed. *See, e.g.*, *Carpenters & Joiners Welfare Fund*

*v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988) ("[T]he term 'unpaid contributions' has

been interpreted to mean contributions unpaid at the time suit was filed, rather than contributions

which were delinquent for some time but which were paid up before suit was filed."). Therefore,

under 29 U.S.C. § 1132(g)(2), Plaintiffs cannot recover liquidated damages, interest, and

attorneys' fees and costs for the late payments from April 2018 through September 2019 that

were resolved at the time this suit was filed—only for the $5,351.26 that remained outstanding.

*See* ECF No. 18 at 4. Nevertheless, as in *Trustees of Glaziers Local 963 Pension, Welfare, &*

*Apprentice Funds v. Walker & Laberge Co.*, "it is of little practical significance because

liquidated damages in this case are the same under the terms of the Trust Agreements and the

statutory provisions of § 1132(g)(2)(C)(ii)." 619 F. Supp. 1402, 1405 (D. Md. 1985). While

Plaintiffs cannot recover liquidated damages, interest, and attorneys' fees and costs for the "habitually late" payments from April 2018 through September 2019 that were resolved at the time the suit was filed under 29 U.S.C. § 1132(g)(2), they can do so under the terms of the Trust Agreements.[7] Because the "statutory damages to which plaintiffs are entitled for the delinquent contributions . . . are the same as the damages provided in the trust agreements for delinquent contributions," "there is no reason to calculate separately the liquidated damages for [the unpaid contributions] and the delinquent contributions from the remaining months which were satisfied in full prior to suit." *Trustees of Glaziers Local 963*, 619 F. Supp. at 1405. The Court will therefore award damages based on the figures submitted, *see* ECF No. 18-1 at 4, without differentiating whether they are recovered under 29 U.S.C. § 1132(g)(2) or the Trust Agreements.

Plaintiffs may likewise collect attorneys' costs and fees associated with recovering both the delinquent and unpaid payments, as they are provided for under 29 U.S.C. § 1132(g)(2) and the Trust Agreements. *See* ECF No. 13-1 at 10–12; ECF No. 13-2 at 49, 79, 110, 141, 179, 224–

---

[7] While one court of appeals decision has found that § 1332(g)(2) preempts remedies that would otherwise be available, *see Carpenters & Joiners Welfare Fund v. Gittleman Corp.*, 857 F.2d 476, 478 (8th Cir. 1988), at least three circuits have found that § 1332(g)(2) does not preempt contractual damages available under federal common law, which governs the interpretation of ERISA plans, *see Idaho Plumbers & Pipefitters Health & Welfare Fund v. United Mech. Contractors, Inc.*, 875 F.2d 212, 216–17 (9th Cir. 1989); *Michigan Carpenters Council Health & Welfare Fund v. C.J. Rogers, Inc.*, 933 F.2d 376, 390 (6th Cir. 1991). The Court is persuaded by their reasoning that § 1332(g)(2) does not preempt contractual damages here. Additionally, Defendant did not raise this issue, and the Court thus finds it waived. *See Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Bristol Manor Healthcare Ctr., Inc.*, 153 F. Supp. 3d 363, 372 n.10 (D.D.C. 2016); *see also Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").

Courts have also found contractual liquidated damages provisions to be unenforceable penalties. *See Idaho Plumbers*, 875 F.2d at 216–17; *see also Michigan Carpenters Council Health*, 933 F.2d at 390 ("We caution, however, that in assessing liquidated damages to those contributions not covered by section 1132(g)(2), the district court should examine whether the liquidated damages provisions in the operative collective bargaining agreements constitute a penalty under federal common law."); *but see Operating Engineers Local 139 Health Benefit Fund v. Gustafson Const. Corp.*, 258 F.3d 645, 655 (7th Cir. 2001) ("[W]hile the ban on contractual penalties remains an established principle of the law of contracts, it is antiquated and should not be extended into ERISA-land."). But Defendant did not raise this issue, and the Court finds it waived.

25. Accordingly, the Court will direct the parties to submit briefing on the appropriate award of fees and costs.

### b. New Allegations

In their Reply Memorandum, Plaintiffs state, "[s]ince filing Plaintiffs' Motion, it was determined that America's Best also underpaid contributions to the Pension Fund, Apprenticeship Fund and IA Fund for the period December 2019 through January 2020 in the amount of $779.25." ECF No. 18 at 4; *see also* ECF No. 18-1 ¶ 4. This District has previously allowed judgments to include unpaid contributions that were not sought in the initial Complaint where the plaintiffs sought an additional unspecified amount that would become due in subsequent months in their Complaint, such that the defendant properly "had notice of what could be included in any additional damages," and where the defendant was put on notice of the specific damages sought when they were served with copies of the plaintiff's motion for default judgment. *Trustees of Nat'l Automatic Sprinkler Indus. Welfare Fund v. Bristol Fire Prot., Inc.*, No. GJH-17-450, 2018 WL 1115144, at *5 (D. Md. Feb. 26, 2018); *see also Trustees of the Nat'l Automatic Sprinkler Indus. Welfare Fund v. Harvey*, No. GJH-15-521, 2016 WL 297425, at *6 (D. Md. Jan. 21, 2016). However, in this case, because the additional damages were raised only in the Reply Memorandum, Defendant has not had the opportunity to dispute that it failed to pay those contributions or to dispute the damage calculations for the allegedly delinquent payments. Therefore, the court will deny summary judgment with respect to the additional damages, and the $779.25 in missing contributions for December 2019 and January 2020, as well as the $11,172.66 in associated liquidated damages and interest,[8] will be subtracted from Plaintiffs' damage award.

---

[8] These figures are derived from the itemized sheet included as ECF No. 18-1 at 4.

**IV.      CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted, in part, and denied, in part. Judgment is entered against Defendant and in favor of Plaintiffs in the total amount of $135,291.19 exclusive of attorneys' fees and costs.[9] Additionally, post-judgment interest shall accrue until the judgment is satisfied pursuant to 28 U.S.C. § 1961. A separate Order shall issue.

Dated: <u>November 10, 2020</u>                                      /s/_____
                                                                    GEORGE J. HAZEL
                                                                    United States District Judge

---

[9] This amount includes the requested damages, $147,243.10, less the December 2019 and January 2020 contributions and associated damages. *See* ECF No. 18-1 at 4.